Thank you, Your Honor. Good morning. I'm Evan Davis and I represent Mr. Delmar Hardy. I'd like to reserve five minutes. Okay. Watch the clock. We'll try to help you. Will do. Your Honors, this case was about a busy lawyer running a six attorney office who was convicted solely because he relied on his internal bookkeeper and his accountant to gather appropriate records and prepare accurate tax returns. That's a good jury argument, but the jury didn't buy it. So are you telling us there's not sufficient evidence here to support the conviction? No, Your Honor. Why not? Why am I saying there's not sufficient evidence? Yeah. I mean, there are plainly the reports that were filed were not accurate. Do you agree? Yes. There was certainly circumstantial evidence that your client knew the reports were not accurate. The bookkeeper said, I told him, that our profit and loss statements would be different if we included cash receipts. And there was evidence that he told people, I'll keep, you know, this is a better way to keep the cash because I, you know, this is a better way for me to do it. Divide it up right here. Let's not put it in the books. You know, not overwhelming evidence, but why not sufficient? We didn't argue sufficiency. Well, that's what I'm just asking. You're making a jury argument saying, you're making an argument just saying he was convicted solely because he relied on others. But the jury obviously concluded differently. So tell me what the legal error in the case was. So the problem was that the jury instructions, as given, were directed to whether Mr. Hardy made a mistake in essence in whatever information was provided to the accountant. In essence, the jury instructions, if you read them closely, appear to assume that the taxpayer who's being charged was involved in the preparation of documents and the transmission of documents to a return preparer. And if there was a mistake in those documents, that's a defense. The instructions do not directly address whether there was reliance. And Mr. Hardy is not unusual in the way that he relied. He's a small business owner. This is what I was trying to get at, really, with the first line. He's a small business owner who has other things that he concentrates on. He relied — So with respect, our Dorotich case indicates that it's not reversible error to refuse to give a reliance on an accountant instruction if a specific intent instruction is given. And, of course, that did occur in this case, right? That occurred in this case, except my reading of Solomon and Dorotich is it goes back to whether the instructions were, in context, sufficient. And that's a de novo review by this panel, not simply was there an instruction. But the Court — this Court actually has to look at the instructions in the context of the other instructions and the evidence that was determined. Let's say — let's say that we have done that, that we've looked at this. We see the specific intent instruction. Dorotich says that's sufficient. You don't have to give a reliance on the accountant. And then, as my colleague indicated, evidence was produced showing that your client specifically told the bookkeeper why cash was not included, even though the bookkeeper said, you know, that's not going to work very well. And there were other people who were told, as well, the jury bought that rather than your client's position. What's wrong with that? So there are a number of things that I would take issue. But first, on the — your — the Court's explanation of the record, what I heard the Court say is that the evidence was that Mr. Hardy said, don't put the cash in the record, and I think that the record is very clear, that Ms. Mack testified repeatedly, the reason cash didn't end up in QuickBooks is because she couldn't figure out when cash is not deposited in the bank account how to include that in QuickBooks. But he — but the record is clear that he knew cash wasn't in QuickBooks. She testified to that. She testified to that. The record is not clear. Well, it's clear — it's clear taken into light most favorable to the government. I understand that, yes. So — so, again, we're not arguing about the sufficiency of the evidence. Right. If you agree with Judge Smith that you're not always required to give a reliance on accountant instruction, indeed, our cases say if you give this other instruction, that's enough. Why is this the case where it's required? This is the case where it's required for three reasons. The first is, as I was mentioning earlier, if you read the instructions, normally when you're talking about reliance, there is, in most cases, there's more involvement by the taxpayer in the return preparation. And as I was discussing, if you look at the standard instructions, assume that a taxpayer gathers documents, hands them over to an accountant, and if there's a mistake, then the instructions adequately cover the fact that the taxpayer missed a document. That's a perfect example of where the instructions cover. The instructions do not address where there is no mistake at all by the taxpayer. Well, but you keep — you see, you keep saying that as if it were a fact. And the problem here is that there was sufficient evidence, you say, you don't dispute, for a jury to conclude that your client just didn't simply make a mistake, and the jury was instructed that it could only convict him if he had the specific intent to provide false information. So I'm trying to figure out why that — why that instruction isn't enough to cover your — your argument. Mr. Hardy didn't provide any information. Okay? The process was a regular process. His accountant was not simply someone who had documents delivered once a year to prepare returns. He was the regular accountant for the — for the law practice. He was physically on-site, the CPA, physically on-site about once a month, as my recollection of the record, driving up from Las Vegas to Reno, as I recall, for that. Or at least he was specifically on-site. So you have someone who is interacting with a bookkeeper who was delegated entirely the responsibility of gathering information and transmitting it. Counsel, let's then go in a different way. Your — your client, the evidence shows, was very careful with money, and yet he had this really big lifestyle, you know, all these bells and whistles and gadgets and trips and all kinds of things, and yet the tax returns show — show basically that he wasn't making any money. He's a smart guy. How does that — isn't the jury entitled to say, you know, this guy knew perfectly well what he was doing? Isn't that to basically solve the specific intent problem? So that goes, I think, most directly to the Jewell instruction, which is this is the government's argument, in essence, what the Court just said, which is, look, you've got someone who is a successful lawyer who was paying attention, at least in some respects, to finances. Taxes may have been a different issue, but he was at least paying attention to finances, and he spent a lot of money. Or he was paying attention to taxes, too, because there was testimony that he — he had a specific instruction with the accountant about the XYZ Corporation. Yes. That's not — that's not the basis of the — of the charges you're now talking about. But he — there was evidence that he paid attention to his tax returns. And there was also evidence from Mr. Muhlenberg saying that whenever he prepared the tax returns, Mr. Hardy never had a single question. So the Court is correct that there was that evidence. There was also contrary evidence. But getting back to the difference between the expenditures and the tax — what was reported on the tax returns, the IRS had a CPA who testified on behalf of the government precisely to that, that here's a chart. There's a million dollars of expenditures, and the tax returns reported — there was income reported from the business, but, of course, for two of the three years, but that was offset by various deductions, as you would expect with a business owner with rental properties, et cetera. So you see this huge number of a million dollars and zero next to it for taxable income. Mr. Hardy was prevented from rebutting that by reflecting — by having a CPA testify that the actual tax loss, when the CPA went through things that were not claimed on the tax return, was about $12,000 over those three years, $4,000 a year. So if a — if a taxpayer — if the jury heard a million versus zero and was prevented from hearing, well, it was only $4,000, that's a number that any one of us might miss on a tax return. Given — I know we've certainly heard the evidence in favor of the government. There was substantial evidence that Mr. Hardy was not paying attention to his taxes, his personal income tax returns, and he simply relied on the process. But he never — Kennedy, counsel, again, we're talking what a jury determined here. I mean, you could — your argument, of course, is one way to approach this. But the reality is, at this point, the jury has spoken. It's your burden, if you're going to overturn this, to show that you just don't add up. And what I struggle with is this — the lifestyle, the fact that virtually no tax owed during, I think it was a three-year period, when there are millions of dollars taken in. Isn't a jury entitled to infer, based on the specific intent instruction, that he knew perfectly well what he was doing, that he was pocketing the money, his cash, he kept it out? There's no question, I don't think, either from him or other people, that he did not deposit the cash into the QuickBooks, right? There's no question. Okay. So, got that evidence, got his lifestyle, big lifestyle, no tax. That satisfies the specific intent instruction, does it not? When the evidence is — is just from one side. Sure. And that's what — by the way, that's what we — that's what we do. Well — When we — when we review cases, we take the evidence in the light most favorable to the government. So — Well — So I understand that you think the jury goofed, but we can't fix that. We have to look at the legal issue. Well, and the legal issue is, were the instructions sufficient? So let me ask you about the expert. Yes. Because I want to understand. You wanted to put — the expert was allowed — your expert was allowed to testify about some things, but not others, correct? Correct. And one of the things he wasn't allowed to testify about was that if I reconstructed Mr. Hardy's tax returns over that period, he wouldn't have had a lot of liability anyway. Correct. If he'd included this million dollars or so or $500,000 and so in income that he left out, he would have had offsetting deductions. Correct. Was the expert prepared to testify that Mr. Hardy knew he would have had offsetting deductions? Or was this just a post hoc reconstruction by an expert? It was — I didn't see a proffer on that first issue. So, for example, if the expert had been his accountant who said, I told him at the time, don't worry about income taxes because you got lots of deductions, that would be one thing. But what we have is an expert later saying, gee, I'm an expert, and I can go back post hoc and reconstruct the — the circumstances of those years, and I can now put together a tax return, even with this income, that doesn't result in a lot of liability. I'm not sure how relevant that is to his mens rea if he didn't know about those deductions. It — it directly rebuts the idea that a million — Well, but only if he — only if he would have known that all these other deductions were there. Now, an expert later who's smart enough to find them doesn't tell me what his mens rea was at the time. Do you want to say — I do. I — the only thing I would like to add is Mr. Hardy testified, Ms. Mack, his bookkeeper, and Mr. Muhlenberg all testified that they believed that the cash was included in the tax returns at the time. This wasn't just Mr. Hardy. Everyone involved thought it was included, and Mr. Hardy simply relied on the others to make sure that it happened. Thank you. Thank you. Good morning. Good morning. May it please the Court. Alyssa Hart Mahan for the United States. The evidence in this case demonstrated that the defendant designed his office procedures to keep the cash receipts off of the books. He was adamant that the cash not be deposited into bank accounts. And that evidence was provided by whom? Primarily Patty Mack, who was defendant's bookkeeper. But there were other individuals who worked at the office who confirmed her account of the office procedures. At least Patty Mack and other people that said specifically that we were told that the cash would not go in the QuickBooks. So Patty Mack testified about the QuickBooks. The testimony about the cash not being deposited in the bank account was confirmed by several other witnesses. But it was Patty Mack who testified that the defendant knew that the cash was not entered into the QuickBooks, that she notified the defendant that the profit and loss statements that he regularly reviewed did not include cash, and that defendant was the one who made the decision not to enter the cash into QuickBooks. There was other evidence that he kept a close eye on the firm's profitability, costs, income, that he was the decision-maker in the office, that she followed his instructions. All of that leads to the conclusion that he did, in fact, he both knew and caused the cash not to be entered into the QuickBooks. The record of the record of the record of the record of the record of the record  You should finish. The record also demonstrates that Excuse me. I lost my train of thought. Your question, please. I thought you were done. I apologize. I was just wanted to ask you about the instruction on the reliance on an accountant's instruction. So as I recall, the government's position below was that Mr. Hardy was not entitled to that instruction because he couldn't show that he had made full disclosure of all of the relevant facts. Right. We also argued that there was not evidence that the accountant advised, gave advice. Okay. So that was a secondary argument. But the primary argument was the lack of full disclosure. Okay. So on the first argument, though, I guess I'm just maybe trying to understand how far your argument sweeps. Because let's say that I thought that I had made full disclosure in the sense that I instructed my bookkeeper to make all of the relevant records available to the But in fact, she had not. I'm not even saying that that's necessarily what happened here, because I know Mr. Hardy says, no, actually, the accountant had access to everything. But let's just say I reasonably think that full disclosure has been made, but just as an objective factual matter, it was not. Am I entitled to the instruction under those circumstances? No. If full disclosure has not been made, you're not entitled to the instruction. As the government ---- But he's contending in this case that full disclosure was made sloppily, he says. Correct. I ---- my accountant had access to everything. We gave him all the ---- you know, he should have. He should have. I relied on him, perhaps mistakenly. Why not ---- see, I'm not ---- I think the other side has a hard time getting over the fact that a specific intent instruction was given. But like Judge Watford, perhaps, I don't know, his question suggests it, I'm a little mystified about why the government opposes the advice on the accountant instruction. What you seem to be saying is, we're going to win on the merits, so he shouldn't get that instruction. You're only entitled to the instruction, it's well established in both advice of counsel and advice of accountant, that you're only entitled to the instruction if full disclosure has been made. Well, but he ---- So you're saying to assume that full disclosure ---- He claims full disclosure was made. He presents some evidence that full disclosure was made. Correct. So ---- Isn't that the jury's function? Why shouldn't the instruction be given? And the government argued below, and we believe now, that that was an argument that the defendant could and, in fact, did make to the jury, that I believed I had made full disclosure. I believed that my tax returns were correct. And it may be harmless error. I'm just ---- I don't understand the government's position on the advice of accountant instruction. It seems to me it should have been given.  But I don't understand the argument. You didn't make full disclosure when the guy says, I did. I mean, he ---- There's a difference between a belief that full disclosure was made and actual full disclosure. And this Court's decision in Bishop rejected the idea that the subjective standard modifies the full disclosure requirement. But it's not a sub ---- it's not ---- I'm not sure we need to spend a lot of time on it. But it's not a sub ---- not merely subjective here. He said, I told them ---- I instructed my bookkeeper to give them, the accountant all the relevant records. I gave my accountant access to all of my relevant records. That testimony may be not credible. It may not be believable. But it at least was his position, and he supported it by evidence in the record. So his position was that he said to do it. But the fact of the matter was, there was not full disclosure. Counsel, just to kind of put this to rest, even if the line of questioning that my colleagues are pursuing was correct, say there was an error that it could have been given, doesn't Dorotich say, if even it's an error, it's not reversible error so long as a specific intent instruction was given? Correct. Is that correct? So in this case, that instruction was given. So even if the, even if he properly said, you know, look, I made full disclosure here, I have a titleless instruction. Even if the court was in error, it's not reversible error because of those cases. That's correct. And defendant does not, I mean, the specific intent, the court gave both a specific intent instruction for willfulness and an independent good faith instruction, both of which came from the Ninth Circuit pattern instructions. Defendant does not challenge those instructions. They adequately informed the jury of the government's burden. Well, okay. I'm not really focused yet on harmlessness, because I'm just trying to figure out if there even was error. And that's why I'm asking about this, even though ultimately Judge Smith might be right. It won't affect the outcome. But I guess I don't understand why the good faith belief that I have made full disclosure is not sufficient. I don't understand how you can argue that just because as an objective matter full disclosure wasn't made, even though I had no, I had no knowledge of that, I thought that the accountant had access to all of the records because I directed my bookkeeper to make that happen. And for whatever reason, she failed to do so. How do I not get the instruction under those circumstances? As we read this Court's precedents, the full disclosure requirement is an absolute requirement. There must have been full disclosure. And the defendant can argue, I believed I made full disclosure, I was acting in good faith, I did not know that the tax returns were incorrect, I did not know that my bookkeeper, you know, made mistakes or did not do what I told her to do, and all of that is a defense. And under the court's instructions here, if the jury had credited those statements, they would not have convicted the defendant. But if it's a defense, why don't I get an instruction telling the jury that they should acquit me if they believe my account? I, again, refer to the fact that the good faith and specific intent instructions subsume the good faith reliance instruction, as this Court has held many times, not just in Dorotich, but in more recent cases as well, both in the advice-of-counsel context and the advice-of-accountant. In any event, this Court need not reach that question because of the harmlessness issue we just discussed, but also because Mullenberg never advised, never provided advice to the defendant to the effect that he did not have to report the cash receipts. The defendant didn't seek his advice. Mullenberg didn't provide that advice. The defendant didn't rely on that advice in good faith. There's no ---- Roberts, I don't understand that argument, either, because it's just, I mean, I don't know, maybe I base it too much on my own personal experience. But when I give all of the information to my accountant and I get the tax returns back, what I'm relying on is that they did it right. I'm not asking them a specific question, per se, but, my goodness, I would hope that if there's some mistake on there that I didn't catch, that I'm not going to be criminally liable for that. There's a distinction, I think, between factual mistake or ignorance and good faith reliance on advice. And I think two of the cases that we cite in our brief are instructive here. The Trevino case distinguishes between ignorance, where the defendant said, I thought the return was correct, I didn't know what was in there, and this Court said that's ignorance is different than a good faith reliance defense. And then also the Van Allen case from the Seventh Circuit, where the defendant claimed there was disclosure to the lawyer, but there was no evidence that the lawyer advised the defendant to take the course of action that he did. And the accountant in this case testified that no such advice was given, right? Correct. I think everybody agrees here that the defendant knew that he had a duty to report those, those factual mistakes. Look, I want to get you out of digging your hole deeper on this topic, particularly given our specific intent cases. I want to ask you about the expert evidence that they wanted to present. Yes. Because the judge lets you put in a lot of evidence about lavish lifestyle. Correct. And from what the jury was supposed to infer, that anybody with that kind of lifestyle would have, would have, when he saw his returns that only had a little bit of, a little bit of taxable income at the end, or income tax liability, to put it differently, would have known they were wrong. And he wanted to say, no, I wouldn't have known they were wrong because the nature of the business I run is such that I've got offsetting deductions for everything I bring in. Why, why, why isn't that evidence he should have been allowed to present? So the record here demonstrates that the, the district court excluded the evidence of tax loss. And on a couple of occasions said, you know, we're not here to determine how much the defendant owes in taxes, you know, with references to jury confusion. The district court recognized that the defendant was entitled to present evidence as part of his case-in-chief about offsetting deductions or expenses that could have been included but weren't. And defendant's expert testified at length about deductions. Scalia. Right. But the, the difficulty with that, so the evidence gets in front of the jury, but your argument, the government's argument to the jury is, come on, somebody with this lifestyle must have known his returns were wrong because he had so little taxable liability. And they were unable, they were not able to put that final, I've got lots of deductions, but the jury wasn't told that had they been claimed, his taxable liability would have been about the same as it was. The, the jury, the evidence before the jury included the, I, I believe I'm correct, that the evidence before the jury included the size of the, of some of the deductions that were missed. Actually, don't Skoll and Marabels and a few other of our cases indicate that even the absence of tax liability is not a defense to a 7206A offense? That's correct. And, and those are the cases that the district court relied upon. So the district court had plenty of reason for saying, you know what, even if this comes in, it's, it's not a defense. It doesn't help them. That's correct. Under our case law. I would also note that the defendant was allowed to present evidence of unclaimed deductions. The government introduced evidence through an e-mail from the defendant to his accountant that defendant made a deliberate choice not to claim those deductions when his returns were being prepared the first time around, because he so that the e-mail said, don't, don't worry about claiming the stock write-offs. Don't worry about claiming the stock losses. We have enough write-offs. Just leave it. Suggesting that he knew that if his deductions greatly exceeded his income, that the IRS, you know, might take interest. And that it was a deliberate choice not to claim those deductions, not necessarily an error by his accountant. Could you address, if you have time, the XYZ issues, this, the alleged spillover? The alleged spillover. As we're not talking about during the Adams administration. The, yes, Your Honor. The, the, so the count 5 was the 7212A count charging the defendant with a corrupt endeavor to obstruct the IRS. This count was dismissed after the, by the government after the Supreme Court decided Marinello. And the defendant has argued that there was spillover prejudice justifying a new trial on the false return counts. The record demonstrates there was no spillover and there was no prejudice. And I think the, the main factor that motivated the district court in its order denying, denying defendant a new trial was the fact that the jury rendered a selective verdict here. The jury was correctly instructed to consider each count separately. The jury acquitted on count 1, which was the conspiracy to structure financial transactions. Which dealt with XYZ. Which also dealt with XYZ, correct. So, so the jury did deliver a selective verdict. As we argue in our brief, the evidence that went to count 5 about how XYZ was characterized on the tax return was admissible both for count 1, the conspiracy to structure financial transactions, which involved XYZ, and also counts 2 through 4 because the amended returns that were filed in 2012 after, or that were prepared in 2012 after the IRS, after an IRS agent came to interview the defendant, indicated that they were being revised in order to correct the characterization of, of XYZ. And the evidence also demonstrates that defendant interacted with his accountant about how to characterize XYZ on his tax return, suggesting that he didn't, in fact, just sign whatever his accountant gave him. He actually was involved in making decisions about how certain transactions should be characterized, characterized on his tax return. The evidence does show that when the tax returns were amended after the IRS interview, that the defendant was very much involved in that decision and the way it was implemented. Is that correct? That, that is correct. It, it was the defendant who came in and told Patty Mack, we need to tally up all the cash receipts, only for 2009 and 2010, which were the only years that the agents asked about, even though, you know, 2008 also was missing substantial cash receipts. And that he said, we have to get this information to Mullenberg, and that, that, you know, Mullenberg would, would prepare the amended returns at the defendant's direction. Is that how the cash, the handling of the cash receipts came to the government's attention, was through the, the defendant providing these amended returns? I, I, because it seemed like it started out with an investigation of the XYZ matter, and then I didn't understand how this cash stuff got infused into the case. That's not in the record, and I, I have no independent knowledge, so I'll, I'll defer. Even if you wanted to, even if you wanted to commit misconduct, you couldn't. Correct. We ask the Court to affirm. Thank you very much. Counsel? Yes, rebuttal time. Thank you, Your Honors. I would ask that the Court look back at the instructions actually given to see whether it matches up with the reliance defense. And, and I would suggest that it doesn't. The, the one, I think, essential difference in this case to Solomon Dorotich, which, you know, we've addressed in our briefs, is, and it, a reliance instruction was, in fact, given here. It was given for Count 5. It was a big signal to the jury that reliance was not a defense to Counts 2 through 4, because reliance was specifically identified as being applicable to Count 5. That doesn't exist in Solomon. It doesn't exist in Dorotich. It doesn't exist in any other cases we're talking about. And this Court, we suggest, has to look on a de novo basis, not simply check the box that a, a specific intent instruction was given, but in the context of this case, in the context of all of the instructions, was it needed here? And given the level of reliance, which is different than in most cases, where everything was delegated, the instructions here were insufficient. I, I would also like to point out that a couple of cases cited Trevino and, and Van Allen. Conspiracy was that in Trevino, which is one of this Court's cases, the return preparer and the taxpayer conspired. A bunch of the cases the government cites, there was a conspiracy. That's not what happened here. This was simply an error by the return preparer. Van Allen's bankruptcy case that doesn't involve Cheek as a consequence. We're out of time. Thank you very much, Your Honor. Thank you both, counsel, for your arguments. Very helpful. The case just argued is submitted. We will now hear argument in the case of Singh and Matsuura.
judges: M. Smith, Watford, Hurwitz